## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 13-20417-ClV-MORENO-OTAZO-REYES

JEAN EDOUARD HENRIQUEZ,

         Plaintiff,

v.

TOTAL BIKE, LLC D/B/A DUCATIMIAMI,
DESMOTORI, LLC D/B/A DUCATIMIAMI,
DAVID SEGUIA SIFONTES A/K/A
DAVID SEGUIAS,

         Defendants.
_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, by and through the undersigned, hereby files his response in opposition to the above described motion and states as follows:

1.   This matter arises under the Fair Labor Standards Act.

2.   Defendants posit two arguments in support of their motion for summary judgment.

3.   Defendants first argue that Plaintiff was exempt under the "mechanic's exemption," 29 U.S.C. 213(b)(10)(A).  However, as this exemption, like all FLSA exemptions, are to be construed narrowly against the employer, and the Plaintiff did not perform mechanical work on any of the classes of items specifically delineated by the exemption, summary judgment must be denied in this regard.

4.   Alternatively, Defendants argue that Plaintiff was exempt under 29 U.S.C. 207(i) as he was paid an hourly rate per hour billed to the customer, which the Defendants describe as a "commission."  However, as the manner of billing in this case distinguished Defendants' payment practices from other members of the auto

1

repair/service industry, classifying Plaintiff as exempt would be contrary to the intent and purpose of the exemption and Defendants' motion for summary judgment must be denied in this regard as well.  Additionally, for a period of the claim, Plaintiff was paid at a flat salary with no regard for hours worked or hours billed to the customers and is therefore clearly not exempt for this period regardless of the Court's determination as to the validity of the Defendant's "commission" based structure.

5. Finally, Defendants argue that any violations were not willful and were made in good faith.  However, as an issue of fact for the jury remains on the issue of willfulness, and 11th Circuit jurisprudence states that a determination on the issue of good faith cannot be made until the jury determines the issue of willfulness, summary judgment must be denied in this regard as well.

## RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS

1. No material dispute.

2. For the purposes of Defendants' motion, no material dispute.

3. It should be noted that the asset purchase agreement is dated October 2011, but for purposes of Defendants' motion, no material dispute.

4. No material dispute.

5. No material dispute.

6. No material dispute.

7. Disputed in part as set forth in the corresponding paragraphs below.

8.a.  While the classification of the payments as a "commission" is a legal conclusion which requires no response, no dispute to the payment structure for this time period.

8.b.(i-v) No material dispute.

8.b.vi.   With respect to February 2012, Plaintiff remained working for Defendants. During this period, Plaintiff was paid to continue working through his vacation time. Defendants paid him $7,000 which constituted both his regular compensation and compensation for vacation time that he did not take.  (See affidavit of Plaintiff paragraph 7)

8.b.viii.    From May 10, 2012 through the end of Plaintiff's employment, he was paid a flat rate every two weeks irrespective of the number of hours he worked each week and the number of hours billed to the customers. (See affidavit of Plaintiff paragraph 8).

8.b.ix.  Disputed as indicated in response to paragraph 8.b.viii above.

9.a.i.  Disputed as indicated in response to paragraph 8.b.viii above.

9.a.ii.  Disputed as indicated in response to paragraph 8.b.viii above.

9.a.iii.  Disputed as indicated in response to paragraph 8.b.viii above.

10.  Disputed, see deposition of David Seguias.

11.  No material dispute.

12.  No material dispute.

13.  No material dispute.

14.  No material dispute.

15.  Disputed as indicated in response to paragraph 8.b.viii above, and for all other time periods the term commission is used as a legal conclusion which requires no response.

16.   No material dispute except as previously stated in response to paragraph 8.b.viii above.

17.  Most payroll periods, Plaintiff received an ADP paystub and a document titled "611 Technician Billed v Actual Hours" ("611 Document"). The 611 Document's title is a misnomer because, in fact, the actual hours Plaintiff worked were never recorded and the "Actual Hours"

do not reflect Plaintiff's actual hours worked. With only a few minor exceptions, the vast majority of 611 Documents show "Actual Hours" that are equal to the "Billed Hours." (See affidavit of Plaintiff paragraph 9, affidavit of Rudolf Michael Von Lignau paragraph 6).

18.  See response to paragraph 17.

19.  It is not disputed that the Defendants did not pay the Plaintiff overtime as required by the FLSA.  Whether or not he was properly categorized as an exempt employee is a legal conclusion that does not require a response.

20.  Plaintiff did object, on numerous occasions, to the manner in which he was paid. Specifically, he would object on numerous occasions directly to Defendant David Seguias where the time he actually spent was considerably more than the amount of time billed.  Plaintiff was not compensated for these hours. (See affidavit of Plaintiff paragraph 10)

21.  No material dispute.

22.  No material dispute.

23.  No material dispute.

24.  No material dispute.

25.  No material dispute.

26.  No material dispute that Plaintiff filed the instant lawsuit.  Whether or not Plaintiff was properly classified as exempt under the FLSA is a legal conclusion that does not require a response.

27.  No material dispute.

28.  No material dispute.

29.  Legal argument that does not require a response.

## **ADDITIONAL FACTS IN OPPOSITION TO SUMMARY JUDGMENT**

1.    Rudolf Michael Von Lignau, former general manager at DucatiMiami during Plaintiff's employment, describes the billed hour system as follows:  The Ducati manufacturer provides standard hours for various kinds of service jobs for their motorcycles. The hours billed to customers for tasks performed by DucatiMiami service technicians are based on these recommendations from the Ducati manufacturer. The amount actually billed to the customers is determined by the service manager. The amount of hours billed to customers for tasks was consistently and substantially less than the amount of time service technicians, such as Jean Edouard Henriquez, actually spent performing the work.  This was not because service technicians performed the work slowly, but because DucatiMiami was not organized in a way that would permit the service technicians to meet the standard Ducati times. Examples of DucatiMiami's disorganization included being understaffed, having inexperienced people in supervisory roles and not maintaining inventory of parts due to mismanagement by David Seguias. David Seguias micromanaged the operation of DucatiMiami and prohibited the automatic ordering of parts without his approval. (See affidavit of Rudolf Michael Von Lignau, paragraphs 3 and 4, deposition of Plaintiff P16, L19-25; P17, L1-23)

2.    Furthermore, several other tasks which Plaintiff regularly performed were not assigned hourly values at all and were never billed to customers.  These duties included performing regular maintenance on company equipment, travel time to and from offsite maintenance and repair jobs. The amount of time billed to a customer for a job would be identical regardless of whether the job took place onsite at DucatiMiami or offsite at a customer's location. (See affidavit of Plaintiff paragraph 4, affidavit of Rudolf Michael Von Lignau paragraph 5)

3. Additionally, when Defendants required Plaintiff to attend Ducati training to maintain his Ducati certification, which was necessary for the continued operation of the DucatiMiami business, he was paid only his flat weekly rate with no opportunity to earn any additional compensation through billable hours for jobs performed for customers,. These training periods would consume partial weeks and full weeks. (See affidavit of Plaintiff paragraph 5).

4. Alex Arango, a former parts representative for DucatiMiami from June 2012 through the end of Plaintiff's employment, had duties which included selling parts for DucatiMiami over the counter to customers and to the service department at DucatiMiami. During Alex Arango's employment with DucatiMiami, there was a regular shortage of parts that needlessly required service technicians, such as Mr. Henriquez, to expend more time than necessary to complete their assigned tasks. This was because DucatiMiami was not organized in a way that would permit the service technicians to meet the standard Ducati manufacturer times. Examples of DucatiMiami's disorganization included being understaffed, having inexperienced people in supervisory roles and not maintaining inventory of parts due to mismanagement by David Seguias. David Seguias micromanaged the operation of DucatiMiami and prohibited the automatic ordering of parts without his approval.  (See affidavit of Alex Arango, paragraphs 2 and 3).

5. Plaintiff only serviced motorcycles. (See Deposition transcript of Plaintiff, P41, L22-24; Deposition transcript of David Seguias, P43, L6-16).

6. Plaintiff worked an average of approximately 54 hours per week. (See affidavit of Plaintiff, paragraph 2).

7. Defendants credited to Plaintiff an average of only 21.04 billable hours each week. (See Exhibit A.)

6

## **MEMORANDUM OF LAW**

### I.   SUMMARY JUDGMENT STANDARD

Pursuant to Fed.R.Civ.P. 56, a summary judgment should be granted if, following sufficient discovery, there is no genuine issue of material fact to be decided by a jury; therefore summary judgment is to be granted as a matter of law. *Hoffman v. Allied Corp*., *et al.,* 912 F.2d 1379, 1383-84 (11th Cir. 1990), *citing, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   In determining if a genuine issue exists, the court must query whether "a reasonable jury could return a verdict for the nonmoving party…."  *Hoffman v. Allied Corp*., *et al.,* 912 F.2d at 1383. *See also, Beal v. Paramount Pictures Corporation*, 20 F.3d 454, 459 (11th Cir. 1994)("Summary Judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law"); *Silas v. Hillsborough County*, 2006 U.S. Dist. LEXIS 79503, *3-4 (M.D. Fla. 2006)(in FLSA matter court found "[s]ummary judgment is proper if following discovery … there is no genuine issue as to any material fact….").

### II.   FLSA EXEMPTIONS, GENERALLY

An employer relying on an exemption to the minimum wage and overtime provisions of the FLSA has the burden of proving the applicability of that exemption. *Klinedinst v. Swift Inv., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001). Given the remedial purpose of the FLSA, the exemptions from the FLSA's coverage must be narrowly construed against the employers seeking to assert them. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *see also Klinedinst*, 260 F.2d at 1254. An employer seeking to assert an FLSA exemption has the burden of proving that the employee falls "plainly and unmistakably within the terms and spirit" of the exemption. *Nicholson v. World Bus. Network, Inc.*, 105 F.3d 1361, 1364 (11th Cir. 1997) (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)). The Eleventh Circuit has held that "the

7

employer, bears the burden of proving the applicability of a FLSA exception by 'clear and affirmative evidence.'" *Klinedinst*, 260 F.3d at 1254 (citing *Birdwell v. City of Gasden, Ala.*, 970 F.2d 802, 805 (11th Cir. 1992)). The exemption is construed narrowly against the employer who seeks to assert it. *Cleveland v. City of Los Angeles,* 420 F.3d 981, 988 (9th Cir.2005).

### III.  THE PLAINTIFF IS NOT EXEMPT UNDER 29 U.S.C. 213(b)(10)(A)

The "mechanic's exemption", 29 U.S.C. 213(b)(10)(A), provides that employees whose primary duty involves the servicing of *automobiles, trucks, and farm implements* may be exempt under the FLSA.   Plaintiff does not dispute that Defendants were a non-manufacturing establishment primarily engaged in selling or servicing motorcycles, nor does Plaintiff dispute that his primary duty involved the servicing of motorcycles.  However, as discussed above, FLSA exemptions are to be narrowly construed against the employer seeking to assert them. Although the statute clearly delineates certain classes of machinery, motorcycles are not among them.  Notably, the statute does distinguish between trucks and automobiles, despite the fact that both are "wheeled vehicle[s] for use on roads without rails, which carries itself a mechanical motor with its source of power" which is the definition the Defendants rely upon in order to lump motorcycles into the category of automobile.  As a result, Defendants' reading of the statute would render the category of truck redundant and therefore deprive the statute of its plain and ordinary meaning.   Such a reading would be contrary to long standing 11th Circuit and Supreme Court jurisprudence and must be rejected. *See Polycarpe v. E&S Landscaping Service, Inc.,* 616 F.3d 1217, 1223 (11th Cir. 2010) (The terms "goods" and "materials" are presumed to have different meanings under the FLSA, citing *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 122 S.Ct. 941, 951, 151 L.Ed.2d 908 (2002) ("[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that

Congress acts intentionally and purposely in the disparate inclusion or exclusion.")

It is undisputed that Plaintiff only serviced motorcycles. (See Deposition transcript of Plaintiff, P41, L22-24; Deposition transcript of David Seguia, P43, L6-16).   When the "mechanic's exemption" is read in a manner which gives the terms its ordinary meaning, and interpreted in such a way that both trucks and automobiles have separate, distinct meanings, as this Court must do, Defendants Motion for Summary Judgment must be denied on this point.

### IV.  PLAINTIFF IS NOT EXEMPT UNDER 29 U.S.C. 207(i)

Defendants next argue that the Plaintiff was exempt under 29 U.S.C. 207(i).  Plaintiff does not dispute elements one or two of the exemption.  Nor does the Plaintiff dispute the manner in which he was paid, i.e. a "flat rate" or "commission" wherein different repair tasks were assigned hourly values, and the Plaintiff's pay was calculated by multiplying the hourly value by a flat hourly rate.   It is Plaintiff's position that he was not an exempt employee because the Defendants' repair business was not operated in a way consistent with *Klinedinst. v. Swift Investments, Inc.,* 260 F.3d 1251, 1256 (11th Cir. 2001), and the Defendants should not be entitled to claim exempt status as the policy rationale in that case does not exist in the present case.  In other words, because the Plaintiff was required to work far more than the hourly values billed to the client, and because the Plaintiff performed tasks which were not billed to the client whatsoever, there was no incentive based pay system in place which would entitle the Defendants to claim Plaintiff as exempt based upon a bona fide commission structure.

In *Ealy-Simon v. Liberty Medical Supply*, 2007 WL 1521628 (S.D. Fla, May 23, 2007), the Defendants also cited to *Klinedinst* in support of the proposition that the Plaintiff's were exempt under the FLSA as commission based employees.  Judge Moore, however, found in favor of the Plaintiffs, noting that the commissions at issue were not "incentives for employees to work

efficiently and effectively" citing *Klinedinst*, 260 F.3d at 1256.  Instead, the Court found that the flat-fee, per-item incentives were not commissions for the purposes of the FLSA as the price of the item sold was "largely irrelevant" to the bonus amount paid to the employees. *Ealy-Simon*, 2007 WL 1521628 at 6.

Similarly, in the instant case, the work environment created by the Defendants did not incentivize the employees to work efficiently or effectively.  In fact, due to the Defendants being understaffed and having unqualified supervisory employees, the amount of hours worked was *consistently* more than the hours billed.  (See deposition of Plaintiff P16, L19-25; P17, L1-23). Rudolf Michael Von Lignau, former general manager at DucatiMiami during Plaintiff's employment, describes the billed hour system as follows:  The Ducati manufacturer provides standard hours for various kinds of service jobs for their motorcycles. The hours billed to customers for tasks performed by DucatiMiami service technicians are based on these recommendations from the Ducati manufacturer. The amount actually billed to the customers is determined by the service manager. The amount of hours billed to customers for tasks was consistently and substantially less than the amount of time service technicians, such as Jean Edouard Henriquez, actually spent performing the work.  This was not because service technicians performed the work slowly, but because DucatiMiami was not organized in a way that would permit the service technicians to meet the standard Ducati times. Examples of DucatiMiami's disorganization included being understaffed, having inexperienced people in supervisory roles and not maintaining inventory of parts due to mismanagement by David Seguias. David Seguias micromanaged the operation of DucatiMiami and prohibited the automatic ordering of parts without his approval. (See affidavit of Rudolf Michael Von Lignau, paragraphs 3 and 4, deposition of Plaintiff P16, L19-25; P17, L1-23).  Furthermore, several other

tasks which Plaintiff regularly performed were not assigned hourly values at all and were never billed to customers.   These duties included performing regular maintenance on company equipment, travel time to and from offsite maintenance and repair jobs. The amount of time billed to a customer for a job would be identical regardless of whether the job took place onsite at DucatiMiami or offsite at a customer's location. (See affidavit of Plaintiff paragraph 4, affidavit of Rudolf Michael Von Lignau paragraph 5)

This distinguishes the instant case from *Klinedinst*, because when the hours worked are consistently more than the billed amount, as here, there is no good faith estimate, and no actual relation of what is paid to the employees to the value of the work. In a case such as this one, the pay structure more closely resembles a "piece rate," which does not exempt an employer from the FLSA's overtime requirements.   (*See* 29 U.S.C. 207(g); 29 C.F.R. 778.111).

Finally, the Plaintiff's position is that from May 10, 2012 through the end of Plaintiff's employment, he was paid a flat rate every two weeks irrespective of the number of hours he worked each week and the number of hours billed to the customers. (See affidavit of Plaintiff paragraph 8).  This unquestionably would not satisfy the requirements of 29 U.S.C. 207(i), and therefore during this period the Plaintiff should not be classified as exempt regardless of what the Court rules upon the Defendants pay system.

## V.  QUESTIONS OF FACT PRECLUDE ENTRY OF SUMMARY JUDGMENT ON THE ISSUE OF WILFULLNESS, WHICH IN TURN PRECLUDES SUMMARY JUDGMENT ON THE ISSUE OF ENTITLEMENT TO LIQUIDATED DAMAGES

Defendants next argue that even should the Court find in Plaintiff's favor on the issue of whether or not an FLSA violation occurred, the Court should grant summary judgment on the issues of willfulness and good faith.  As questions of fact remain for jury determination on the issue of willfulness, which in turn precludes a judicial determination on the issue of good faith,

11

the Defendants motion must be denied on this point as well.

In *Davila v. Menendez*, 717 F.3d 1179 (11th Cir 2013), the trial court granted Defendants' motion for directed verdict on the issue of whether or not the Defendants committed a willful violation of the FLSA and State Minimum Wage laws for statute of limitations purposes. After the jury returned a verdict in favor of the Plaintiff, the Plaintiff moved post trial for imposition of liquidated damages. The Court denied Plaintiff's Motion and Plaintiff appealed. The Court first found that the District Court erred in granting Defendants' motion for directed verdict, as the Plaintiff during trial elicited testimony, inter alia, that the Defendants knew of the hourly wage requirements, but failed to investigate whether or not their payment practices were in violation of them. *Davila,* 717 F.3d at 1185. The Court remanded for a new trial on the issue of wilfullness, and also held that the Plaintiff was entitled to reconsideration on the issue of liquidated damages following the jury determination on wilfullness, stating:

> Before making a determination as to Davila's entitlement to liquidated damages, the district court was required to await the finding of the jury about willfulness. "The willfulness or good faith question [must be] answered first by the jury to determine the period of limitations and then, if there is a verdict for the employee, again by the [district court] to determine whether to award liquidated damages." *Alvarez Perez*, 515 F.3d at 1162. If the jury finds that the Menendezes acted willfully, then their good-faith defense would necessarily fail, and Davila would be entitled to liquidated damages. *See id.* at 1166 ("[I]n [a Fair Labor Standards Act] case a jury's finding in deciding the limitations period question that the employer acted willfully precludes the court from finding that the employer acted in good faith when it decides the liquidated damages question.")
> *Id.* at 1186.

In this matter, as in *Davila*, the individual Defendant acknowledged at deposition that he was aware of the FLSA's overtime and minimum wage requirements. (See deposition transcript of David Seguias, P91, L17-25; P92, L1-20.)  This creates an issue of material fact precluding summary judgment on the issue of willfulness, which in turn precludes a finding of summary judgment on the issue of liquidated damages, which must be considered following the jury

determination on willfulness.

WHEREFORE, Plaintiff respectfully requests entry of an Order denying Defendants'

Motion for Summary Judgment on all counts.

Respectfully submitted,

Koz Law, P.A.
80 S.W. 8th Street, Suite 2000
Miami, Florida 33130
Phone: (786) 924-9929
Fax:    (786) 358-6071
Email: ekoz@kozlawfirm.com

_____
Elliot Kozolchyk
Bar No.: 74791

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on October 17, 2013 with the Clerk of Court using CM/ECF along with having served all counsel of  record or pro se parties identified on the service list incorporated herein in the manner specified, either via transmission of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notice of Electronic Filing.

_____
Elliot Kozolchyk

## **SERVICE LIST**

Christopher Jallo, Esq.
Kopelowitz Ostrow Ferguson Weiselberg Keechl
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, FL 33301
Tel:    (954) 525-4100
Fax:    (954) 525-4300
Email: jallo@kolawyers.com