UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case Number: 13-CV-20417 Moreno-Otazo-Reyes

JEAN EDOUARD HENRIQUEZ,

    Plaintiff,

vs.

TOTAL BIKE, LLC d/b/a DUCATIMIAMI,
DESMOTORI, LLC d/b/a DUCATIMIAMI,
DAVID SEGUIA SIFONTES a/k/a DAVID
SEGUIAS,

    Defendants.
_____/

**DEFENDANTS' REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    Defendants, Total Bike, LLC ("Total Bike"), Desmotori, LLC ("Desmotori"), and David Seguias ("Seguias") (collectively, "Defendants"), by and through undersigned counsel, hereby file this Reply in Support of Defendants' Motion for Summary Judgment, and state as follows:

    1.    On September 30, 2013, Defendants filed their Motion for Summary Judgment ("Motion") (D.E. No. 45), which sought summary judgment against the Plaintiff, Jean Edouard Henriquez's ("Plaintiff" or "Henriquez"), pursuant to (*inter alia*) 29 U.S.C. § 213(b)(10)(A) and 29 U.S.C. § 207(i).

    2.    On October 17, 2013, Plaintiff filed his Response in Opposition to Defendant's Motion for Summary Judgment ("Response") (D.E. No. 54) arguing that: (a) § 213(b)(10)(A) does not apply because a motorcycle is not an automobile as defined under the statute; (b) § 207(i) does not apply because Plaintiff was not employed in an environment that "incentivize the employees to work efficiently and effectively"; and (c) that the issue of willfulness as to liquidated damages and limitations period is an issue of fact for the jury.

    3.    As explained in more detail below, Plaintiff has failed to satisfy its burden of presenting competent evidence designating "specific facts" showing that there is a genuine issue for trial." Weiner v. Carnival Cruise Lines, 2012 WL 5199604, *2 (S.D. Fla. Oct. 22, 2012) (citing United States v. $183,791.00, 391 F. Appx. 791, 794 (11th Cir. 2010) and Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Plaintiff's Response is merely predicated on conclusory assertions, which this Court has regularly held cannot defeat summary judgment.  Weiner, 2012 WL 5199604m at *2 (citing MaddoxJones v. Bd. of Regents of Univ. of Ga., 2011 WL 5903518, *2 (11th Cir. Nov. 22, 2011).

I.      **Failure to Comply with Local Rule 56.1**

As an initial matter, Defendants filed their Statement of Undisputed Facts ("Statement") in support of their Motion. Although Plaintiff filed a Response (which does not dispute the majority of the Defendants' Statement), the opposition to Defendants' Statement has failed to comply with S. D. Fla. L. R. 56.1.

Local Rule 56.1 requires that all statements of fact, whether set forth in the initial motion *or the opposition thereto*, shall…"(2) [b]e supported by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court; and (3) *consist of separately numbered paragraphs*." S. D. Fla. L. R. 56.1(a) (emphasis added). Further, "[a]ll material facts set forth in the movant's statement…will be deemed admitted unless controverted by the opposing party's statement." S. D. Fla. L. R. 56.1(b).

> This Court explained:
>
> The Local Rule serves "to make review of summary judgment motions less burdensome to the Court." [S.D. Fla. L.R. 56.1] cmts. (2008); see also Carolina Acquisition, LLC v. Double Billed, LLC, No. 07–61738–CIV, 2009 WL 1298362, at *1 (S.D.Fla. May 8, 2009). It is also consistent with determining the appropriateness of summary judgment. See Phillips v. City of Dawsonville, 499 F.3d 1239, 1241 (11th Cir.2007) ("Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." (emphasis added)). ***Both the Court and the litigants are served well by adhering closely to the requirements of the Local Rule***.

Ocean's 11 Bar & Grill, Inc. v. Indemnity Ins. Corp. RRG, 2012 WL 2675435, *2-3 (S.D. Fla. July 6, 2012) (emphasis added).

Paragraphs 8.b.vi, 8.b.viii, 8.b.ix, 9.a.i., 9.a.ii., 9.a.iii, 10, and 15-18 of Plaintiff's Response to Defendants' Statement of Material Facts ("Response to Statement") and Paragraphs 1-7 of Plaintiff's Additional Facts in Opposition to Summary Judgment ("Additional Facts") fails to include any "*specific*" references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court in support of Plaintiff's denial of these undisputed facts. For example, other than vaguely and ambiguously referring to the Defendants' deposition transcript, Paragraph 10 of Plaintiff's Response to Statement fails to include any specific reference to the portion of the deposition transcript that Plaintiff relies on. Instead, Plaintiff expects the Court and Defendants to go on a fishing expedition to determine the basis for any such denial to Defendants' Statement of Undisputed Facts.[1]

---

[1] The 2002 Comments to Local Rule 56.1 also "make clear that, with regard to voluminous materials, only those parts actually used need to be filed…Therefore, only the portions of the deposition transcripts actually "used" need to be filed." Notwithstanding the foregoing, in violation of Local Rule 56.1, Plaintiff has filed the entire transcript from the Defendants' deposition even though the entire deposition was not actually used. (D.E. No. 54-5).

Moreover, in Paragraph 12 of the Response to Statement, Plaintiff does no dispute Defendants' assertion that he worked an average of 48 weekly hours for the Defendants. However, Paragraph 6 of Plaintiff's Additional Facts alleges that Plaintiff worked an approximate "54 hours per week", which contradicts the record evidence before this Court. (D.E. Nos. 1, 1-1, 17, 17-1 and 40). Plaintiff's internally inconsistent position to the Statement of Facts should be rejected.

Paragraphs 1-4 of Plaintiff's Additional Facts, which is a combination and summarization of Plaintiff's three affidavits (D.E. Nos. 54-2, 54-3, 54-4), does not "consist of separately numbered paragraphs" and should be rejected by this Court.

Paragraphs 8.b.vii, 9, 19, 26 and 29 have not been controverted or denied by the Plaintiff. Accordingly, Pursuant to Local Rule 56.1(b), the foregoing statements shall be deemed admitted by this Court.

Accordingly, any particular Response to Statement and/or Additional Facts which fails to comply with Local Rule 56.1(a)(2) or (3) should be stricken.

## II.     29 U.S.C. § 213(b)(10)(A)

As to the application of the exemption under 29 U.S.C. § 213(b)(10)(A), Plaintiff's sole defense is predicated on the argument that a motorcycle is not an "automobile" as the term is used in § 213(b)(10)(A).[2] In particular, Plaintiff argues that Defendants definition of the term automobile, which would include motorcycles, would deprive the statute of its plain and ordinary meaning since under the Defendants' interpretation a "truck", which is a separate class of vehicle identified in § 213(b)(10)(A), could also be construed as an automobile. Even though Plaintiff has failed to provide this Court with his interpretation of the word automobile (or its proposed limitation) or any specific memorandum of law supporting the argument, his arguments is without merit.

While exemptions are construed narrowly, and the burden of proof rests with the employer, generalizations may be made about the type of exemptions that are applicable to this case. Because the FLSA was conceived to combat worker exploitation, Congress crafted the FLSA so as to apply only to the ranks of the traditionally exploited, creating numerous exemptions for those deemed not in need of federal protection.

In Yi v. Sterling Collision Centers, Inc., 480 F.3d 505 (7th Cir. 2007), the Seventh Circuit recognized circumstances in which certain exemptions can be expanded without rendering the remedial nature of the FLSA ineffectual or easily evaded. Id. at 508. Like the term "automobile" under the 13(b)(10)(A) exemption, the Yi court recognized that the FLSA does not define what a "commission" is

---

[2] Plaintiff is not disputing that Defendants were a non-manufacturing establishment primarily engaged in selling or servicing motorcycles or that Plaintiff's primary duties involved the servicing of motorcycles. (D.E. No. 54 at Pg. 8).

under the 7(i) exemption. Notwithstanding the foregoing ambiguity, the term "commission" was interpreted to include a *broad range* of pay methodologies, including pay methods that are not labeled as commissions by the parties, since this expansion would not render the FLSA's protections useless, it would not take away jobs from other qualified individuals and, more importantly, it would not exploit workers by forcing them to work abnormally long hours which compromised their safety and health. <u>Id</u>. at 508; See also <u>Dong Yi v. Sterling Collision Centers, Inc.</u>, 2006 WL 1444897, *2, 6 (N.D. Ill. May 17, 2006).

Similarly, here, Defendants interpretation of the word "automobile" does not render the FLSA's protections useless or further the exploitation of mechanics that would otherwise not be exempt under the FLSA. Contrary to Plaintiff's efforts to create similarities between vehicles that are generally identified as "automobiles" and "trucks", automobiles, including motorcycles, are clearly distinguishable. In particular, automobiles and motorcycles are commonly and historically identified as *private* self-propelled vehicles whose primary purpose is to transport *private persons/passengers*. <u>Wright v. Beacon Mut. Indem. Co.</u>, 179 N.E.2d 547, 553 (Ohio Com. Pl. 1961) ("Modern usage assigns signs to the word automobile the restricted meaning of a motor-driven vehicle *suitable and intended for conveyance of persons*.") (emphasis added).

On the other hand, trucks are not commonly or historically designed or used for the transportation of private persons/passengers. In fact, trucks are typically self-propelled *commercial* vehicles designed and/or used for the transportation of *property*. <u>See</u>, <u>e.g.</u>, <u>Frank Motor Homes, Inc. v. U.S.</u>, 230 F.Supp. 782, 783 (E.D.Mich. 1964), *judgment aff'd*, 354 F.2d 660 (6th Cir. 1965) ("A truck is a vehicle with which to haul freight or cargo. No definition of the word truck includes a vehicle designed exclusively to house and transport human beings."); <u>Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc.</u>, 419 Mass. 462, 466-67 (Mass. 1995) (holding that the term "automobile" does not include trucks); <u>see also</u> <u>Merriam-Webster Online Dictionary</u>, November 4, 2013, www.merriam-webster.com/dictionary/truck, (defining a "truck" as "a wheeled vehicle for *moving heavy articles*…**a:**...automotive vehicle (as a pickup) *for hauling*…**b:** a small heavy rectangular frame supported on four wheels for *moving heavy objects*…**f:** an automotive vehicle with a short chassis equipped with a swivel for attaching a trailer and used especially for the highway *hauling of freight*); <u>Online Etymology Dictionary</u>, November 4, 2013, www.etymonline.com/index.php?search=truck&searchmode=none, (defining tuck as a "motor vehicle for carrying heavy loads"); 49 C.F.R. § 390.5, Text of Definition effective Oct. 23, 2015 ("Truck means any self-propelled commercial motor vehicle except a truck tractor, *designed and/or used for the transportation of property*.") (emphasis added).

The word automobile is not synonymous with the word truck, thereby the distinction between the two classes of vehicles in 29 U.S.C. § 213(b)(10)(A) is necessary. Plaintiff has failed to satisfy its burden

12117.12117-001/00369381_1

4

in showing that a genuine issue for trial exists as to the 13(b)(10)(A) exemption and, therefore, the exemption should be extended equally to motorcycle mechanics (like the Plaintiff).

**III.     29 U.S.C. § 207(i)**

Despite Plaintiff' previous testimony that he was not paid a commission and was not seeking compensation for unpaid commissions in this action, Plaintiff no longer disputes that Defendants have satisfied the elements necessary to establish the exemption under 29 U.S.C. § 207(i), including the fact that Plaintiff was paid in excess of one and one half times the legislative minimum wage and that he was paid commissions during his employment with Defendants. (Response to Statement at ¶¶ 1, 10 and 14, Response at Pg. 9; D.E. No. 54). However, Plaintiff attempts to distinguish the flat rate system admittedly utilized by Defendants based on certain unsupported conclusory arguments.

First, Plaintiff argues that the Defendants' business was not operated in a way consistent with Klinedinst v. Swift Investments, Inc., 260 F.3d 1251 (11th Cir. 2001). In particular, Plaintiff argues that Defendants flat rate system is not a "commission" under the 7(i) exemption simply because it did not incentivize the employees to work efficiently and effectively. (Motion at Pg. 9; D.E. No. 54). Contrary to Plaintiff's argument, the retail service commission exemption does not hinge on what Plaintiff incorrectly describes as a "policy rationale". The retail service commission exemption is based on the clear and unambiguous language of the statute, *i.e.*, 29 U.S.C. § 207(i), which does not mandate that a commission on goods and services provide an incentive to employees to work efficiently or effectively.

Although a flat rate system may provide workers an incentive to "hustle" to finish their jobs in order to obtain a larger number of jobs for greater compensation, there has been no indication (and Plaintiff has not cited to any authority) that this basis alone should be dispositive of any court's application of the § 207(i) exemption. In fact, the Eleventh Circuit in Klinedinst conducted a thorough analysis of the provision of the FLSA, the regulations promulgated thereunder, industry standards and the Department of Labor's Field Operations Handbook in determining that a flat rate system of compensation is a commission as contemplated under 29 U.S.C. § 207(i). In performing the above analysis, the Eleventh Circuit found the Wage and Hour Division of the Department of Labor's Field Operations Handbook and 29 C.F.R. § 779.413(b) to be very persuasive. *Id*. at 1255. Interestingly, however, neither the Department of Labor's Field Operations Handbook nor § 779.413(b) makes reference to any requirement that the employer "incentivize the employees to work efficiently or effectively" as the Plaintiff would require.

Like the Defendants, the employer in Klinedinst compensated its mechanics according to a repair "*estimate*", which included "***predetermined***" flag hours (*i.e.*, billed hours) for each particular service job multiplied by the labor rate. *Id*. at 1253 (emphasis added). Therefore, as acknowledged by the Eleventh

Circuit, the flag hours "*did not necessarily reflect the actual time spent completing a job*." More importantly, the Eleventh Circuit confirmed that this type of flat rate system of compensation was a bona fide commission under the FLSA even if it took the employees "*more than…the predetermined number of flag hours [] to complete a job*." Id. (emphasis added).

In fact, the Eleventh Circuit's primary analysis as to whether the exemption applied did not rely on the nature of the incentive provided to the Plaintiff, but on whether the employee was paid on a commission basis that entitled him to receive at least the legislative minimum wage without requiring him to work overtime for it. Klinedinst, 260 F.3d at 1256 ("The function of a commission exemption as embodied by section 7(i) is to ensure that workers who are paid on a commission basis receive at least the legislated minimum wage without requiring them to work overtime for it."). Here, Plaintiff has admitted that his compensation expressed in terms of an hourly "regular rate of pay" was approximately $25.77 an hour (D.E. No. 45 at ¶ 14) (D.E. No. 54 at ¶ 14)—*over three and one half (3.5) times the applicable minimum wage*.[3]

Another critical factor in determining whether a payment constitutes a commission under the § 207(i) is that there exists some proportionality between the compensation to the employees and the amount charged to the customer (not that the employee is being provided an effective or efficient work environment). Klinedinst, 260 F.3d at 1255-1256; Yi, 480 F.3d at 508. Like the employees in Klinedinst and Yi, Plaintiff's compensation was directly proportionate to the fees that Defendants charged to its customers and is an implicit percentage of the fees charged to the customers—an issue which has not been disputed by Plaintiff (Response to Statement at ¶ 16; D.E. No. 45). Klinedinst, 260 F.3d at 1255-1256; Yi, 480 F.3d at 508; Horn, 2009 WL 4042407 at *5.

Plaintiff's reliance on Ealy-Simon v. Liberty Medical Supply, 2007 WL 1521628 (S.D. Fla. May 23, 2007) is without merit as Ealy-Simon is distinguishable in several material respects. There, the employers engaged in the retail of diabetes-related medicine and goods, not a body shop engaging in vehicle service, maintenance and repairs performed by trained and certified technicians. Id. at *1. Unlike the Plaintiff, the plaintiffs were "hourly-paid" employees claiming the defendants' failed to add certain "non-discretionary incentive pay to the regular pay rate when calculating overtime pay." Id. Specifically, the plaintiffs received a "flat-fee, per item incentives for selling particular items," which is a system of compensation commonly referred to as "spiffs". Id. at *5. In rejecting the employers' 7(i) exemption argument, this court distinguished "spiffs" from the flat rate commission paid to the mechanics in Klinedinst (or the Plaintiff in this action) based on the lack of proportionality between the compensation

---

[3] Even assuming Plaintiff worked approximately 54 hours per week as now alleged by Plaintiff in his Response, which contradicts Plaintiff's Statement of Claim (D.E. Nos. 17-1 and 40) on file at the time the Motion was filed, Plaintiff's hourly "regular rate of pay" would still be approximately $22.90 an hour (D.E. No. 45 at ¶ 14) (D.E. No. 54 at ¶ 14), which is over three (3) times the applicable minimum wage.

to the employees and the amount charged to the customer—a material distinction the Plaintiff's response interestingly omits. Id. at *5-6 ("The spiff amounts were set based on the Defendants goals, **and not related to the value of the products**…[T]he price of the item sold is irrelevant to the associated spiff…") (emphasis added). Further, and more importantly, the court recognized that the Eleventh Circuit in Olson v. Superior Pontiac-GMC, Inc, 765 F.2d 1570 (11th Cir. 1985) had previously determined that a "spiff" is not a commission.[4]

Even assuming Defendants' failure to provide an efficient or effective workplace could be considered a factor in rejecting the application of § 207(i), Plaintiff has failed to provide any specific facts showing that there is a genuine issue for trial on this issue. It is axiomatic that it would be in the corporate Defendants' best interests to ensure an efficient work environment, especially since they are/were billing customers on predetermined estimates and their revenue (including the proportionate compensation to Plaintiff) would increase by expediting the flow of work. However, other than conclusory statements by the Plaintiff and two former employees (a former general manager and a parts salesman, both of which are not similarly situated to the Plaintiff and do not have personal knowledge of the Plaintiff's compensation),[5] Plaintiff has failed to introduce specific facts showing that the Defendants failed to provide an efficient workplace to Plaintiff. The record evidence before this Court clearly demonstrates that the flat rate system used by Defendants provided substantial monetary incentives to Plaintiff, i.e., being paid an average regular hourly rate of pay three and one-half times the legislative minimum wage. Further, any down-time caused by alleged inefficiencies (which Defendants deny) was clearly off-set by the guaranteed commissions received by Plaintiff during his employment.

Second, Plaintiff incorrectly argues that the number of hours actually worked on a particular job was "*consistently* more than the hours billed." (Response at Pg. 10; D.E. No. 54). Interestingly, instead of referring to the payroll records, Plaintiff merely cites to conclusory and unsupported statements made at this deposition. (Id.). However, a cursory review of the records produced by the Defendants (D.E. Nos. 45-5, 45-6, 45-7) and the records produced by Plaintiff (D.E. No. 55-4), in particular, the commission reports contained therein, demonstrate that a majority of the "actual hours" were equal to or less than the "billed hours" charged to the customers.

---

[4] This Court also noted that the defendants failed to prove all elements of § 207(i) since there was no showing that the commissions constituted more than half their compensation. Id.

[5] Interestingly, Rudolf Michael Von Lignau's affidavit is internally inconsistent in that Mr. Von Lignau blames the Defendants' inefficiencies on disorganization, lack of parts and *inexperienced people in supervisory roles*, even though he admits that he was the supervisor/general manager from November 2010 through February 2012. (D.E. No. 54-3 at ¶¶ 3-4). Apparently, Mr. Von Lignau caused the alleged inefficiencies and now attempts to place blame on the Defendants in an effort to support the Plaintiff's unsubstantiated claims. Further, neither Mr. Von Lignau nor Mr. Arango was employed during the entire course of Plaintiff's employment. (D.E. No. 54-4 at ¶ 2) (D.E. No. 54-3 at ¶ 3). Therefore, both of them lack personal knowledge of Defendants' business or payroll practices, including Plaintiff's employment, during material time periods. Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion **must be made on personal knowledge**…").

Finally, Plaintiff's argument that he was only paid a "flat rate irrespective of the number of hours he worked each week and the number of hours billed to the customers" from May 10, 2012 through the end of his employment is borderline frivolous and specifically contradicted by the aforementioned payroll records. As described in detail in Plaintiff's Motion (D.E. No. 45 at ¶¶ 8-9), including the payroll summaries attached thereto (D.E. No. 45-11), Plaintiff was paid a flat rate on billed hours with a guaranteed minimum for a majority of his employment. Specifically, with only a couple minor variations, from March 1, 2012 through October 9, 2012, Plaintiff's method of compensation did not change.[6]

In fact, from May 2012 through the end of his employment, Plaintiff's compensation continued to be directly proportionate to the hours billed to the customers: (a) May 24, 2012 – Plaintiff received $265.50 (5.90 Billed Hours multiplied by $45.00 flat rate) *plus* an extra $3,734.10 in guaranteed commissions (D.E. No. 45-11 at Pg. 8); (b) June 7, 2012 – Plaintiff received $1,109.25 (24.65 Billed Hours multiplied by $45.00 flat rate) *plus* an extra $2,890.35 in guaranteed commissions (*Id*. at Pg. 8); (c) June 21, 2012 – After adjustment for the guaranteed commission, Plaintiff received an additional $3,595.00 (179.75 Billed Hours multiplied by $20.00 Partial Flat Rate) (*Id*. at Pg. 9); (d) July 6, 2012 – After adjustment for the guaranteed commission, Plaintiff received an additional $1,845.00 (92.25 Billed Hours multiplied by $20.00 Partial Flat Rate) (*Id*. at Pg. 9); (e) July 19, 2012 – After adjustment for the guaranteed commission, Plaintiff received an additional $1,410.00 (70.50 Billed Hours multiplied by $20.00 Partial Flat Rate) (*Id*. at Pg. 10); (f) August 2, 2012 – After adjustment for the guaranteed commission, Plaintiff received an additional $650.00 (32.50 Billed Hours multiplied by $20.00 Partial Flat Rate) (*Id*. at Pg. 10); (g) August 16, 2012 – After adjustment for the guaranteed commission, Plaintiff received an additional $1,533.00 (76.65 Billed Hours multiplied by $20.00 Partial Flat Rate) (*Id*. at Pg. 10); (h) August 30, 2012 – After adjustment for the guaranteed commission, Plaintiff received an additional $1,233.00(61.65 Billed Hours multiplied by $20.00 Partial Flat Rate) (*Id*. at Pg. 10); (i) September 13, 2012 – After adjustment for the guaranteed commission, Plaintiff received an additional $1,355.00 (67.75 Billed Hours multiplied by $20.00 Partial Flat Rate) (*Id*. at Pg. 10); (j) September 27, 2012 – After adjustment for the guaranteed commission, Plaintiff received an additional $677.00 (70.50 Billed Hours multiplied by $20.00 Partial Flat Rate) (*Id*. at Pg. 11); and (k) October 11, 2012 - After adjustment for the guaranteed commission, Plaintiff received an additional $1,012.00 (50.6 Billed Hours multiplied by $20.00 Partial Flat Rate) (*Id*. at Pg. 12).

A substantially similar flat rate system was used prior to May 10, 2012; however, Plaintiff attempts to differentiate the two merely because the corporate Defendants, for organizational purposes

---

[6] Although Plaintiff's guaranteed expected minimum commission changed throughout his employment, these changes were made at his request in an effort to create greater monetary incentives. (Plaintiff Depo. at 20:18-25, 21:1-19; D.E. No. 39).

and clarity, chose to separate the guaranteed expected minimum commission from the total commission from billed hours in its payroll records. (Motion at FN 5; D.E. No. 45).

Plaintiff has failed to satisfy its burden in designating "specific facts" showing a genuine issue for trial as to the 7(i) exemption. Consequently, summary judgment is warranted in Defendants' favor.

### IV.     Damages

Plaintiff has not filed an opposition to Defendants request for summary judgment on the issue of damages, *i.e.*, Plaintiff's failure to satisfy its burden regarding unpaid commissions. In fact, subsequent to the filing of the Motion, Plaintiff filed an untimely Amended Statement of Claim (D.E. No. 50),[7] which completely abandons Plaintiff's prior claim for unpaid commissions. Consequently, summary judgment is warranted, at least in part, on this issue.

### V.     Statute of Limitations / Liquidated Damages

Although the issue of willfulness is generally a left to the trier of fact, this Court has the authority to limit the applicable statute of limitations where the record evidence before it fails to establish that the Defendants acted in bad faith or willfully regarding whether their conduct was prohibited. Reich v. Department of Conservation and Natural Resources, State of Ala., 28 F.3d 1076, 1084 (11th Cir. 1994). Here, other than conclusory statements regarding Plaintiff's request for additional compensation, Plaintiff has failed to present any evidence that the Defendants acted in bad faith or willfully with respect to any violations of the FLSA. Accordingly, Plaintiff's damages (if any) are specifically limited to two years without any right to seek liquidated damages.

### VI.     Failure to Comply with Fed.R.Civ.P. 56

Pursuant to Fed. R. Civ. P. 56(c)(1), "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Here, Plaintiff attempts to dispute Defendants Statement of Undisputed Facts by relying on two (2) affidavits of purported non-party witnesses (Rudolph M. Von Lignau and Alex Arango).

During the Status Conference on June 28, 2013, this Court limited the scope and extent of discovery in this case pursuant to its authority under Rules 16(b)(3)(B)(ii) and 26(b)(2)(A). In addition to limiting the extent of written discovery allowed, this Court instructed the parties that no depositions (other than the limited depositions of the parties) would be allowed without permission of the court. (D.E. No. 28 at 31:20-25, 32:1-7).

Rule 56 gives a party the right to assert an objection "that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The

---

[7] On October 24, 2013, Defendants moved to strike the Amended Statement of Claim. (D.E. No. 55).

general rule is that inadmissible hearsay "cannot be considered on a motion for summary judgment." Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir.1990).  Further, the courts have consistently held that the affidavit of a witness cannot be used to support or oppose summary judgment where the other party did not have the ability to depose the witness.  See, e.g., Lawyer v. Hillcrest Hospice, Inc., 300 Fed. Appx. 768, 770 (11th Cir. 2008) (striking an affidavit submitted in opposition to summary judgment when the moving party did not have an opportunity to depose the witness based on non-movants failure to disclose.).  Here, in light of the Court's limitation of the extent and scope of discovery, which only occurred after Defendants were compelled to file a motion for protective order and motion to compel against the Plaintiff, Defendants were not able to depose or cross-examine the two non-party witnesses. Although the affiants lack personal knowledge and their affidavits lack specific facts to support a genuine issue for trial, their use at this juncture should be precluded.

WHEREFORE, Defendants, Total Bike, LLC, Desmotori, LLC and David Seguias respectfully request that their Motion for Involuntary Dismissal be granted in all respects, and for such other and further relief as the Court deems just and proper.

**DATED this 4th day of November, 2013.**

                                 **Respectfully submitted,**

/s/ Christopher Jallo
**Christopher Jallo, Esq.**
Florida Bar No. 0072555
E-mail: jallo@kolawyers.com
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG KEECHL**
*Attorneys for Defendant*
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, FL 33301

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on November 4, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Elliot Kozolchyk, Esq.
Florida Bar No. 74791
ekoz@kozlawfirm.com
Koz Law, P.A.
80 S.W. 8th Street, Suite 2000
Miami, FL  33130
786-924-9929 Telephone
786-358-6071 Facsimile

/s/ Christopher Jallo
**Christopher Jallo, Esq.**
Florida Bar No. 0072555
E-mail: jallo@kolawyers.com
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG KEECHL**
*Attorneys for Defendant*
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, FL 33301
(954) 525-4100 – Telephone
(954) 525-4300 – Facsimile